UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

_____

KOSMAS KOUSTAS            )
                          )          Case No. 1:18-cv-00738-LM
                          )
v.                        )
                          )
UNITED STATES OF AMERICA  )
_____)

### SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THE PETITIONER'S MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255.

Now comes the Petitioner Kosmas Koustas who submits the following memorandum to supplement materials previously filed *pro se* in support of his Motion to Vacate pursuant to 28 U.S.C. § 2255.

**RELEVANT FACTS**

On June 25, 2013 Kosmas Koustas[1] was arrested and appeared before the Federal District Court on a multiple count indictment, 14-CR-00093, alleging conspiracy, possession with intent to distribute marijuana and MDMA, felon in possession of a firearm, and possession of a firearm in furtherance of a drug crime. On July 9, 2014, Attorney Michael J. Iacopino[2] filed his appearance, and he continued to represent Koustas until the time of

_____

[1] Hereinafter "Koustas" or "Defendant".

[2] Hereinafter "Iacopino".

sentencing. Jaye Rancourt,[3] an associate at Iacopino, filed her appearance as co-counsel for Koustas the same day.

On December 30, 2014, AUSA Terry Ollila, who represented the government, emailed Iacopino to confirm in writing her ongoing concerns about a potential conflict of interest based on Iacopino's representation of a witness, Trevor Allain,[4] who had been charged in the same ongoing conspiracy and had provided statements inculpating Koustas. *See,* Attorney Affidavit[5] ¶ 12. Specifically, she emailed that she had contacted him [Iacopino] *several months prior* after reading Allain's debriefing report, in order to disclose documents related to Koustas' alleged marijuana distribution activities. *Id.* She noted that she was surprised to see Iacopino's name listed as counsel for Allain because another AUSA had told her Allain was represented by someone else. *Id.* Ollila advised that Iacopino could travel to the US Attorney's Office and review the report to determine if a conflict existed. *Id.* She said she was prepared to disclose the Allain debriefing to determine whether a conflict existed so they could engage in a possible dialogue regarding a non-trial disposition. *Id.*

The referenced report regarding Allain's safety valve proffer indicates that Iacopino represented Allain at the proffer. *See,* Attorney Aff. ¶ 24. Iacopino's associate, Rancourt, who filed her appearance as co-counsel for Koustas, represented Allain as lead counsel on his conspiracy case. *Id.* at 28. In the course of representing Koustas, Rancourt appeared as sole

---

[3] Hereinafter "Rancourt".

[4] Hereinafter "Allain".

[5] Hereinafter "Attorney Aff."

counsel at his motion to suppress—without telling him she had represented Allain.[6] During

the suppression hearing, Rancourt asked no questions related to any confidential source or

informant. *See,* Attorney Aff. ¶ 30.

Subsequent emails between AUSA Ollila and Iacopino dated January 30, 2015 and

February 3, 2015 again referenced the Jencks material, which Iacopino still hadn't reviewed

to determine whether there existed a disqualifying conflict. *See,* Attorney Aff. ¶ 13-14. By

then, AUSA Ollila was finalizing the draft plea agreement, and on February 4, 2015, she

wrote that Koustas's plea would make Iacopino's review of the Jencks materials moot. *Id.* at

15.

On February 9, 2015, AUSA Ollila emailed Iacopino that she was waiting for approval

from the US Attorney relative to the plea agreement. *See,* Attorney Aff. ¶ 16. Iacopino

responded, "Actually I think that John Kacavas has recused himself due to his prior

representation of Koustas." *Id.*

Since at least September 11, 2014, Iacopino and AUSA Terry Ollila  corresponded

---

[6] Compare to co-defendant's Nakos's case, where Nakos's lawyer, Attorney Carey, raised a potential conflict with the Court prior to the detention hearing, noting that during a conflict check Carey discovered Nakos was a plaintiff in a lawsuit that closed in 2009 and Carey's associate represented the defendant in the same suit. There, Carey knew no facts related to the prior lawsuit, the associate who handled the lawsuit no longer worked for the firm, and there was no apparent factual connection between the prior lawsuit and Nakos's criminal case. Nevertheless, Carey informed the client of the nature of the conflict, the client made an informed waiver, and the Court made inquiry. *See*, Nakos transcript, p. 3-4. Here, Rancourt and Iacopino represented an informant, Allain, in the same continuing conspiracy, Allain provided statements that inculpated Koustas, and both Rancourt and Iacopino obtained related confidential communications from Allain during the representation. Yet, neither brought the conflict to the court's attention.

regarding the conflict and supposed recusal of US Attorney John Kacavas.[7] *See,* Attorney Aff.

¶ 17. Specifically, in an email dated September 11, 2014, Iacopino emailed AUSA Ollila that

he understood Kacavas had recused himself from Koustas's case because Koustas was a

former client, noting that he and Don Feith had a conversation about it sometime ago. *Id.*

AUSA Ollila responded that she did not know that Kacavas had recused himself.[8] *Id.*

John Kacavas, then the US Attorney for the District of New Hampshire, had

previously represented Koustas at the Merrimack Superior Court on two counts of receiving

stolen property and one count of reckless conduct, dockets 217-2003-CR-00345, 00346 and

00347. The matters were prosecuted between April 3, 2002 and September 10, 2003, at which

time Koustas pled guilty to all charges. Prior to the guilty plea on those cases, Koustas had

many privileged conversations with then defense attorney Kacavas related to the Merrimack

Superior Court matters, his criminal history, and personal life. *See,* Koustas Affidavit[9] ¶ 7.

However, there is no record of a recusal, and Kacavas's name appears in Kousats's

federal case several times. For example, on January 13, 2014, while the case was still being

investigated, AAG Mythill Ramon wrote to US Attorney John Kacavas, attention AUSA

Ollila, regarding the wiretap of Koustas's telephone. *See,* Attorney Aff. ¶ 7. Specifically, AAG

---

[7] Hereinafter "Kacavas".

[8] Iacopino has stated a document exists written by Don Feith, which acknowledges that Kacavas represented Koustas and was recusing himself. The Defendant was not aware of the document, has not received a copy, and is unaware of what steps, if any, were taken in furtherance of any recusal.

[9] Hereinafter "Koustas Aff."

Mythill Ramon stated that the application pursuant to 18 U.S.C. § 2518 for Koustas's phone number, 508-748-9616, had been approved, permitting a 30-day wiretap interception. *Id.* Later, AUSA Ollila or someone in her office corresponded with Kacavas about resolving Koustas's case. And in the government's pleadings, AUSA Ollila signed as Kacavas's assistant. *See,* Attorney Aff. ¶ 8.

Koustas reports that when he told Iacopino about Kacavas' prior representation, Iacopino said it was inconsequential. *See,* Koustas Aff. ¶ 12-13. On February 15, 2015, Koustas wrote a letter to Iacopino expressing his concern that he (Koustas) was feeling intimidated, threatened and forced into pleading guilty. He asked Iacopino to provide the remaining discovery, including the warrants and related affidavits, and expressed his wish to explore his suppression rights. *Id*. Koustas followed up with a similar letter on February 23, 2015, again asking for the discovery and asserting he was unable to take the plea. *Id.* By April 7, 2015, Koustas agreed he would resolve his case, but still asked Iacopino to investigate his suppression motion prior to pleading guilty. *Id.*

By at least May 2, 2015, Iacopino had decided the case would resolve without a trial. In an email to co-counsel Rancourt, he wrote that he was unconcerned about a scheduling conflict and that Koustas should take the plea. *See,* Attorney Aff. ¶ 22. Koustas, however, asserts he only succumbed to a plea based on pressure from Iacopino, and that he continued to tell Iacopino he wanted a trial up until the time of the plea. Koustas Aff. ¶ 24.

On August 7, 2015, Koustas pled guilty to so much of the indictment as charged

conspiracy to distribute marijuana in excess of 100 grams, possession with intent to distribute

marijuana and MDMA, felon in possession of a firearm, and possession of a firearm in

furtherance of a drug crime. At no time prior to the plea or sentencing did Iacopino, Rancourt,

or AUSA Ollila advise the Court that Iacopino or Rancourt had represented Allain, a

government witness who was convicted as part of the same on-going conspiracy, or that

Kacavas had previously represented Koustas and was therefore conflicted as to the

investigation, prosecution, and sentencing. *See,* Attorney Aff. ¶ 25; 31-33.

## ARGUMENT

The Defendant hereby incorporates all arguments and their factual predicates as

contained in his Ryder, previously submitted by him *pro se.*

**1. <u>The Government Violated Due Process Because Kacavas, Who Represented The Defendant In A Prior, Substantially Related State Matter, Participated In His Prosecution In The Subsequent Federal Case.</u>**

### A. Related Facts

Between April 3, 2002 and September 10, 2003, then defense attorney Kacavas

represented Koustas at the Merrimack Superior Court on two counts of receiving stolen

property and one count of reckless conduct, dockets 217-2003-CR-00345, 00346 and 00347.

On September 10, 2003, Koustas pled guilty to all charges.

During the pendency of his state cases, Koustas had many privileged conversations

with his then attorney, Kacavas. *See,* Koustas Aff.  ¶ 7. The communications included

information related to Koustas's background, history and characteristics; his intent and

conspiratorial agreement with others to commit the crimes alleged; the means and methods of the crimes; potential pretrial and trial defenses; plea negotiation strategies; and sentencing considerations and factors. *Id.* Koustas also discussed more generally his modus operandi and thought process in his criminal schemes; which phones, cars, and properties he used to conduct his illicit affairs; his associates in the charges and uncharged affairs; his strategies and decision-making process in plea negotiations, and other acts and omissions that could result in criminal charges. Koustas Aff. ¶ 8.

During the pendency of the federal case against Koustas, both Iacopino and AUSA Ollila were aware of the conflict. On September 11, 2014, Iacopino informed AUSA Ollila that he understood Kacavas had recused himself from Koustas's case because Koustas was a former client, and mentioned that he [Iacopino] and Don Feith had a conversation about it some time before. *See,* Attorney Aff. ¶ 17. AUSA Ollila responded that she did not know that Kacavas had recused himself. *Id.* Despite this, on February 9, 2015, AUSA Ollila again emailed Iacopino that she was waiting for approval from the US Attorney relative to the plea agreement, and Iacopino reminded her that he thought Kacavas had recused himself due to his prior representation of Koustas. *Id.*

Kacavas himself was on notice at least by January 13, 2014, that his office was investigating his former client. On that date, AAG Mythill Ramon wrote to Kacavas, attention AUSA Ollila, that the application pursuant to 18 U.S.C. § 2518 for Koustas's phone number, 508-748-9616, had been approved, permitting a 30-day wiretap interception. *See,* Attorney

Aff. ¶ 7. Not only was Kacavas himself identified as the recipient of information related to his office's investigation and prosecution of Koustas, but his office sought records from the Superior Court Clerk's Office involving the case in which he (Kacavas) had acted as Koustas's defense attorney. *Id.*

However, Koustas was never put on notice or provided with any formal documentation describing Kacavas's recusal. For example, while the January 13, 2014 letter from AAG Ramon to Kacavas was provided to Koustas as part of discovery, Koustas received no documentation related to Kacavas's recusal. To the contrary, Koustas reports that when he told Iacopino about Kacavas' prior representation, Iacopino responded that it was inconsequential. *See,* Koustas Aff. ¶ 13. And neither Iacopino nor AUSA Ollila made the Court aware that Kacavas had previously represented Koustas. *See,* Attorney Aff. ¶ 25; 31-33.

### B. Kacavas' Prior Representation Of The Defendant Was A Disqualifying Conflict

Attorneys ought not place themselves in situations where their interests conflict with those of their clients. *See, Whitehouse v. United States Dist. Court for Dist. of Rhode Island*, 53 F. 3d 1349, 1360-1361 (1st Cir. 1995). Federal law controls the ethical standards of attorneys in federal court. *See, Kevlik v. Goldstein*, 724 F. 2d 844, 847(1st Cir. 1984)("We start with the generally accepted rule that the district court has the duty and responsibility of supervising the conduct of attorneys who appear before it." (citations omitted.)) Federal courts rely on Local Rules to determine the applicable Rules of Conduct, which are then interpreted under federal law. *See, In re American Airlines Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), cert. denied 507 U.S.

912 (1993).

Accordingly, the New Hampshire Federal District Court adopts the state of New Hampshire's Rules of Professional Conduct. *See,* Local Rule of the US District Court 83.5 DR-1, Standards for Professional Conduct. US District Court 83.5 DR-1 additionally contemplates that prosecutors should be held to the higher standards of conduct established for their profession. *See, Young v. United States ex rel. Vuitton et Fils SA*, 481 U.S. 787, 803 (1987) ("This distinctive role of the prosecutor is expressed in Ethical Consideration (EC) 7-13 of Canon 7 of the American Bar Association (ABA) Model Code of Professional Responsibility (1982): "The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict."); *In re American Airlines Inc.*, 972 F.2d at 610 (An "attorney charged with the public's interest, if anything, should be more circumspect in the initiation of the type of litigation where too often the charge is equated with 'conviction' in the mind of the public—putting the government on notice that they will be held to the highest standards of the bar.")

Conflicts of interest are addressed in the N.H. Rules of Professional Conduct.[10] N.H. Rule 1.9(b) holds:

> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client: (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

_____

[10] Hereinafter "N.H. Rule".

In addition to Rule 1.9, lawyers serving as government officials are bound by N.H.

Rule 1.11(d)(2)(a), which dictates that such a lawyer shall not:

> participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent, confirmed in writing.

"Matter" is defined as:

> (1)  any judicial or other proceeding involving a specific party or parties, including an application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other proceeding; and
> (2) any other matter covered by the conflict of interest rules of the appropriate government agency.

Factors to consider in determining whether the government official is subject to the

prohibition of N.H. Rule 1.11(d) include whether the lawyer supervised or primarily handled a

matter, whether material progress was achieved in the matter, and whether the matter was

reassigned before any substantive review or tasks had been conducted. *Id*., ABA Ethics

Committee Comments [4]. If the government official intends to proceed with consent of the

government agency, Rule 1.9 dictates that consent must also be obtained from the private party

previously represented. *Id.*

### a. Koustas's Prior State Cases And Subsequent Federal Cases Were Substantially Related.

A conflict exists where the new and old matters are the same or substantially related.

*See supra,* Rule 1.9(b). Matters are "substantially related" for purposes of the rule if, "they

involve the same transaction or legal dispute or if there is otherwise a substantial risk that

confidential factual information as would normally have been obtained in the prior

representation would materially advance the client's position in the subsequent matter." *See,*

*Watkins v. Trans Union, LLC*, 869 F. 3d 514, 520 (7th Cir. 2017)("substantial relationship" test looks to Canons 4 and 9 of the A.B.A. Code of Professional Responsibility, and protects the confidences of a client against possible use against him, avoiding "even the appearance of professional impropriety."); *Reading Intern., Inc. v. Malulani Group, Ltd.*, 814 F. 3d 1046, 1050 (9th Cir. 2016); *Zerger & Mauer LLP v. City of Greenwood*, 751 F. 3d 928, 933 (8th Cir. 2014); *Bowers v. Ophthalmology Group*, 733 F. 3d 647, 652 (6th Cir. 2013)(citing ABA rules.) It is not necessary for the defendant to disclose the confidential communications in order to assert the existence of a conflict; it is irrebuttably presumed that the attorney acquired such communication during the course of representation. *See, Sullivan Cnty. Reg. Refuse Dist. v. Town of Acworth*, 141 NH 479, 483 (1996)("Accordingly, a 'former client need never prove that the attorney *actually* misused ... confidences.'")(citation omitted.)

Here, Kacavas was in possession of privileged information provided by Koustas that would materially advance the United States' position in the subsequent prosecution, and so the cases were substantially related. *See, Watkins v. Trans Union, LLC*, 869 F. 3d at 520. Kacavas represented Koustas in a state proceeding in which Koustas was convicted of three felonies—convictions which Kacavas's office later considered in its recommendation of a lengthy prison sentence, and which served as the predicate for the §922(g) conviction. Moreover, Kacavas obtained confidential factual information about Koustas's involvement in the same state crimes used to help drive his sentence in the federal crimes—including Koustas's intent and conspiratorial agreement with others to commit the crimes alleged; the means and methods of the crimes; potential pretrial and trial defenses; plea negotiation strategies; and sentencing

11

considerations and factors. *See,* Koustas Aff. ¶ 7-8. Finally, Kacavas obtained confidential

information about Koustas more generally, including his modus operandi and thought process

in his criminal schemes; which phones, cars, and properties he used to conduct his illicit

affairs; his associates in the charges and uncharged affairs; his strategies and decision-making

process in plea negotiations, and other acts and omissions that could result in criminal charges.

*Id*. All these confidences would advance the position of the United States Attorney's Office, to

the detriment of Koustas.

**b. The Interests Of Kacavas And Koustas Were Materially Adverse.**

Not only must the prior and subsequent matters be substantially related, but the client's

and attorney's interests must be materially adverse. *See supra,* Rule 1.9(b). Materially adverse

interests need not actually be adverse; the potential or perception of an adverse interest is

enough. *See, In re Martin*, 817 F. 2d 175, 182 (1st Cir. 1987)("The test must be more an

objective one. The question is not necessarily whether a conflict exists—although an actual

conflict of any degree of seriousness will obviously present a towering obstacle—but whether a

potential conflict, or the perception of one, renders the lawyer's interest materially adverse to

the [client].") To determine the potential for an adverse interest, or the perception of an adverse

interest, the Court must evaluate the facts of each case. *Id. See also, Pearson v. First NH

Mortg. Corp*., 200 F. 3d 30, 37 (1st Cir. 1999)(where potential conflicts existed that would tend

to divide loyalties.); *Young v. United States ex rel. Vuitton et Fils SA*, 481 U.S. at 807 ("Given

this inherent conflict in roles, there is no need to speculate whether the prosecutor will be

subject to extraneous influence.")

Here, the conflict was a "towering obstacle" to Kacavas's continued representation of the United States in any investigation or prosecution of Koustas, given the plainly adverse interests of the parties. *See, In re Martin*, 817 F. 2d at 182. Even were it not so, the potential for conflict and the perception of conflict—particularly given the higher standards of conduct established for prosecutors (*See, In re American Airlines Inc., 972 F.2d* at 610)—requires a finding that their interests were materially adverse. *See, Young v. U.S.,* 481 U.S. at 807; *In re Martin,* 817 F. 2d at 182.

**c. Kacavas should have been disqualified.**

In *Kevlik v. Goldstein*, 724 F. 2d 844 (1st Cir. 1984), counsel for the defendant previously represented a witness who was expected to testify at the defendant's trial. While defense counsel did not represent both parties simultaneously, the Court held that successive representation under the circumstances was a disqualifying conflict. *Id*. at 850 (In successive representation, the defense attorney "may misuse confidential information obtained from the former client, or may fail to fully cross-examine for fear of misusing confidential information."); *United States v. Oster*, 597 F.2d 337, 340 (2d Cir. 1979)("The principle is well established that an attorney should be disqualified from opposing a former client if during his representation of that client he obtained information 'relevant to the controversy at hand' or 'pertaining to the pending matter.'")(citations omitted).

Like in *Kevlik v. Goldstein*, 724 F. 2d 844 (1st Cir. 1984), Kacavas's successive representation of Koustas and then the United States created a disqualifying conflict. As the US Attorney when Koustas's case was investigated, Kacavas supervised the investigation and prosecution. Prior to indictment, he oversaw the wiretap on Koustas's phone, a significant step

13

in obtaining evidence against his own prior client. Subsequent to indictment, AUSA Ollila assumed Kacavas continued to oversee the prosecution of the case, and she sought out Kacavas's opinion during plea negotiations. Where Kacavas was in a position to misuse the confidential information conveyed to him by Koustas, "[t]he conclusion is inescapable that there exists not only the appearance of impropriety, as the district court found, but a conflict of interest based on the actual or potential use of privileged information. The only way the conflict of interest can be resolved is by termination . . ." *Id*. at 850. Kacavas should have been disqualified.

### C. The US Attorney's Office Failed To Raise The Conflict

The prosecuting attorney has a burden to raise conflicts of interest with the Court. *See, United States v. Burgos-Chaparro*, 309 F. 3d 50, 52-53 (1st Cir. 2002). Moreover, the Model Code of Professional Responsibility, DR 1-103(A), requires an attorney to come forward if he has knowledge of an actual or potential violation of a Disciplinary Rule: "A lawyer possessing unprivileged knowledge of a violation of DR 1-102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation." Federal courts have reversed convictions based on conflicts and chastised the prosecution for knowing about the potential conflicts and not moving for disqualification. *See e.g., Mannhalt v Reed*, 847 F.2d 575, 583-87 (9th Cir 1988)("The prosecution here was fully aware before Mannhalt's trial began of Morris' accusation against Kempton. The prosecution, therefore, had ample opportunity to bring the potential conflict to the trial judge's attention and move for disqualification if appropriate. Such a process would have also enabled Mannhalt if he so desired to waive any conflict on the record after adequate warning. We trust that this opinion

14

will ensure a pretrial disposition of such conflict of interest issues in the future."); *United States v Malpiedi*, 62 F.3d 465, 470 & n 3 (2nd Cir 1995); *United States v Levy*, 25 F.3d 146, 152 (2nd Cir 1994); *United States v Iorizzo*, 786 F.2d 52, 54 & 59 (2nd Cir 1985).

Once a conflict or potential conflict is raised, only the former client can waive the privilege. *See, Kevlik v. Goldstein*, 724 F. 2d at 850 ("The privilege belongs to and may be waived only by the former client; the attorney may not terminate the privilege unilaterally. There has been no consent by the former client here.").Here, the Defendant never waived the privilege, and is aware of no evidence that Kacavas actually recused himself, despite references to a supposed recusal in Iacopino's emails to AUSA Ollila. The opposite is true: discovery received suggests Kacavas had not recused himself. Prior to indictment, Kacavas oversaw of the wiretap on Koustas's phone, suggesting his involvement in this significant step in the investigation, and after indictment, AUSA Ollila sought out Kacavas's opinion during plea negotiations, and claimed no knowledge of recusal. *See,* Attorney Aff. ¶ 7; 14. In sum, Kacavas, and the United States Attorney's Office more generally, failed  to raise the conflict, much less establishing recusal—including satisfactory timing, parameters, and extent. *See, United States v. Burgos-Chaparro*, 309 F. 3d at 52-53.

### D. Kacavas's Involvement In The Investigation, Prosecution, and Sentencing Of His Former Client Violated Due Process.

"The right to due process and a fair trial include the essential element that there is no unfair advantage to the prosecution by reason of a prior professional relationship between a member of its staff and a criminal defendant concerning the same or closely related matter." *United States v. Lavallee*, 439 F.3d 670, 681 (10th Cir. 2006)(citations omitted). Due process is

violated when a lawyer who previously represented a client subsequently prosecutes the same client with respect to the identical matter. *See, United States v. Schell,* 775 F.2d at 565 ("The confidentiality of the attorney-client relationship is severely compromised, if not destroyed, when, after representing a client, a lawyer joins in the criminal prosecution of that client *with respect to the identical matter about which the attorney originally counseled the client.* Such switching of sides is fundamentally unfair and inherently prejudicial. Without question, the client's right to a fair trial, secured by the due process clauses of the fifth and fourteenth amendments, is compromised under these circumstances.")(emphasis in original).

Here, there existed an attorney-client relationship between Koustas and Kacavas, whose office subsequently prosecuted Koustas. Kacavas's involvement as a member of the prosecutorial team, including his supervisory role in the investigation, prosecution, and sentencing of Koustas, violated Rule 1.9(a). Compare *United States v. Lavallee*, 439 F.3d at 713 (where the attorney simply helped to coordinate BOP witnesses for the DOJ attorneys who represented the government in this case, and otherwise played no role in the investigation or prosecution of the charges.) Moreover, Kacavas prosecuted Koustas with respect to the identical matter about which he had originally represented Koustas, insofar as Kacavas oversaw the government's sentencing recommendations, including an additional points for the state convictions for which Kacavas represented Koustas, and the predicate felonies for the §922(g) conviction. As such, Kacavas's supervision and direct involvement in the investigation, prosecution, and sentencing of Koustas violated Due Process.

**E. The Due Process Violation Infected the Entire Framework Of The Prosecution Resulting In Structural Error, Requiring that the Guilty Plea Be Vacated.**

Appointment of an interested prosecutor constitutes an error, which is so fundamental and pervasive that it requires reversal without regard to the facts or circumstances of the particular case. *Young v. United States ex rel. Vuitton et Fils SA*, 481 U.S. at 809-810 ("An error is fundamental if it undermines confidence in the integrity of the criminal proceeding. The appointment of an interested prosecutor raises such doubts.") The structural error standard exists both to protect the individual and to protect the appearance of propriety by the government, because it is a, "fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion, for liberty itself may be at stake in such matters." *Id.* at 810-811. An interested prosecutor also, "calls into question, and therefore requires scrutiny of, the conduct of an entire prosecution, rather than simply a discrete prosecutorial decision." *Id.* at 811-812.

"Since *Kercheval v. United States*, 274 U.S. 220, this Court has recognized that 'unfairly obtained' guilty pleas in the federal courts ought to be vacated." *Santobello v. New York*, 404 U.S. 257, 264-65 (1971). The Court opined: "[O]n timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence." Id., at 224.

Here, Koustas need not demonstrate prejudice because the failure of the US Attorney's Office to timely raise the conflict inherent in an interested prosecution, and to take adequate precautionary measures, is structural error. *Young v. United States*, 481 U.S. at 809-810. Even

were Koustas required to demonstrate prejudice, however, he could meet the standard based on his fear that he could not take the stand nor have a fair trial because the US Attorney's Office possessed confidences that could potentially and unfairly be used against him, and because those confidences could also be used to provide for an unfair increase in any sentence if convicted. These are the exact repercussions structural error is meant to address. *Young v. United States ex rel. Vuitton et Fils SA*, 481 U.S. at 810-811. Because the proceedings were infected with prejudice, and because of structural error, Koustas is entitled to a new trial.[11]

2. **Defendant's Counsel Labored Under An Actual Conflict of Interest That Adversely Affected His Performance In Violation Of The Sixth Amendment Due To His Prior Representation Of A Government Witness**

### A. Related Facts

At all times relevant to the District Court proceedings in this case, Koustas was represented by Iacopino as lead counsel and Rancourt as co-counsel. Prior to taking Koustas's case, both Iacopino and Rancourt had represented Allain, who was earlier charged in the same continuing conspiracy, and who provided the government with information leading to the subsequent investigation and prosecution of others, including Koustas. *See* Attorney Aff. ¶ 24; 28. Rancourt was lead counsel for Allain, and Iacopino represented Allain during his government proffer in 2010. *Id.*

Approximately five months after the prosecution of Koustas commenced, AUSA Ollila emailed Iacopino to confirm in writing her ongoing concerns about the potential conflict of

---

[11] The Defendant also seeks dismissal with prejudice. Without being in possession of any documentation related to Kacavas's supposed recusal, the Defendant reserves on the issue of outrageous governmental conduct. *See, United States v. Guzman*, 282 F.3d 56, 59 (1st Cir. 2002).

interest based on his prior representation of Allain, reminding him that she had notified him of the conflict several months prior. Attorney Aff. ¶ 12. She reminded Iacopino that she possessed related Jencks material which she wanted him to review to evaluate the conflict to determine if they could engage in a possible dialogue regarding a non-trial disposition. *Id*. More than a month passed, and email correspondence suggests Iacopino did not review the material related to the conflict. Even so, the parties were engaging in plea negotiations, with a belief that a plea would make review of the Jencks materials, and presumably any related conflict, "moot." Attorney Aff. ¶ 15.

In mid-February, Iacopino visited Koustas and presented the Jencks material, which was the first that the client was aware that Iacopino or anyone from his office had represented a government witness charged in the same continuing conspiracy. Attorney Aff. ¶ 20. Also in that meeting, Iacopino provided Koustas with a copy of the draft plea agreement. *Id.* Approximately a week later, Iacopino provided Koustas with the discovery in his case. *Id.at 21.*

Despite Iacopino's plea negotiations, Koustas was pushing for Iacopino to file evidentiary motions, including a motion to suppress the search of his house, which led to the seizure of substantial evidence against him. Koustas Aff. ¶ 31. As basis for the motion, Koustas asserted that the police entered and searched prior to obtaining the warrant, and told Iacopino he could obtain evidence from the security company that oversaw the security of Koustas's residence. *Id*. at 32-35. That motion to suppress was never investigated or filed. Rather, on April 10, 2015, the Court heard a motion to suppress at which Rancourt appeared as sole counsel for Koustas and questioned Trooper Norris regarding the basis for the warrant, the

affidavit for which reference unnamed informants and sources of information. Attorney Aff. ¶ 30.

Moreover, Koustas asked Iacopino to bring the various conflicts to the attention of the Court, including that of Kacavas's prior representation and Iacopino's representation of the witness. Iacopino refused, and Koustas finally agreed to a plea despite feeling pressured to do so without his rights addressed. Koustas Aff. ¶ 28-30.

**B. Defense Counsel's Representation Of Koustas After Representing A Government Witness In The Same Ongoing Conspiracy Was An Actual Conflict Of Interest In Violation of the Sixth Amendment.**

The Sixth Amendment right to effective assistance of counsel is violated when an actual conflict of interest adversely affects counsel's representation. *See, Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

"To establish an actual conflict of interest, a defendant must show that (1) the attorney could have pursued a plausible alternative defense strategy, and (2) the alternative strategy was inherently in conflict with or not undertaken due to the attorney's other loyalties ... If [the defendant] can show that some plausible alternative defense strategy or tactic might have been pursued, he need not show that the defense would necessarily have been successful if it had been sued, but merely that it possessed sufficient substance to be a viable alternative." *United States v Cardona-Vicenty*, 842 F. 3d 766, 772-733 (1st Cir. 2016). *See also, United States v. DeCologero*, 530 F.3d 36, 77 n.24 (1st Cir. 2008); *Ramirez-Benitez*, 292 F.3d 22, 27 (1st Cir.2002). Where the defendant fails to object to the alleged conflict, the defendant bears the burden of proving the Sixth Amendment violation. *See, Bucuvalas v. U.S.,* 98 F. 3d 652,

655 (1st Cir. 1996)(citing *United States v. Soldevila-López,* 17 F.3d 480, 486 (1st Cir.1994)

(*citing Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718).

This showing by a defendant of an actual conflict is less burdensome than that required to establish ineffective assistance of counsel claims. *Unites States v. DeCologero*, 530 F. 3d at 76-77 (citing *United States v. Burgos-Chaparro*, 309 F.3d at 52). The defendant must demonstrate that his counsel's performance was affected by the conflict, but need not also establish that the difference in performance prejudiced him in the same sense as in an ineffective assistance claim. *Id. See also, Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *United States v. Levy,* 25 F.3d at 157. ("This is not a test that requires a defendant to show that the alternative strategy or tactic not adopted by a conflicted counsel was reasonable, that the lapse in representation affected the outcome of the trial, or even that, but for the conflict, counsel's conduct of the trial would have been different. Rather, it is enough to show that a conflict exist ed that 'was inherently in conflict with' a plausible line of defense or attack on the prosecution's case. Once such a showing is made, Strickland's 'fairly rigid' presumption of prejudice applies.") *Foster v. United States*, 469 F.2d 1 (1st Cir. 1972)("This court is "peculiarly sensitive to a showing of conflict of interest, if such can be suggested," *Marxuach v. United States*, 398 F.2d 548, 552 (1st Cir.), in the sense that the accused need not delineate the precise manner in which he was prejudiced.") Showing an adverse effect, however, still requires more than mere speculation. *United States v. Burgos-Chaparro*, 309 F.3d at 53.

**a. Defense Counsel Could Have Plausibly Pursued Alternative Defense Strategies.**

The defendant must show that the attorney might plausibly have pursued an alternative

defense strategy. *See, United States v. DeCologero*, 530 F. 3d at 76-77. Such is the case here.

First, Koustas asked Iacopino to file a suppression motion based on the illegal search of

his home. Koustas Aff. ¶ 31. Specifically, Koustas alerted Iacopino that the police entered his

home, broke the security cameras, and searched through his belongings—all prior to obtaining

the warrant. *Id. at 33-34*. He further informed Iacopino that the security company could

provide records demonstrating the time when the cameras were shut off, confirming the time

of the unlawful search. *Id*. at 35. However, Iacopino never pursued the motion as requested.

Second, Koustas asked Iacopino to alert the Court to Kacavas's conflicting representation, and

to file a motion to dismiss. Third, either Iacopino or Rancourt could have cross-examined

Trooper Norris regarding the use of informants and/or sources of information, on the filed

motion to suppress or others not filed. And fourth, Koustas felt pressured into pleading guilty

and wanted to take the case to trial. Koustas Aff. ¶ 18.

All of these could have been plausibly pursued as alternative defense strategies, either

on their own merit, or as part of an overall strategy to obtain a lesser sentence. None of these

strategies were undertaken. *See, Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)(**"**He need not

show that the defense would necessarily have been successful if it had been used, but merely

that it possessed sufficient substance to be a viable alternative."); *Reyes-Vejerano v. United*

*States*, 276 F.3d at 100. ("Reyes-Vejerano has satisfied the first part of this test. It was a

plausible (though likely unwise) alternative defense strategy for him to take the stand and

testify he was innocent.")

### b. Plausible Alternate Strategies Might Have Been Pursued Were It Not For Concerns Raised By The Conflict.

An actual conflict may arise in successive-representation cases because "one client

may stand to gain through negotiations with prosecutors that will injure another, raising

concerns of loyalty; or information obtained in the representation of one client may be

potentially useful to another, raising concerns of confidentiality," especially "if the first client

is a possible witness at the second client's trial." *Reyes-Vejerano v. United States*, 276 F.3d 94,

100 (1st Cir. 2002). "If [the defendant] can show that some plausible alternative defense

strategy or tactic might have been pursued, he need not show that the defense would

necessarily have been successful if it had been sued, but merely that it possessed sufficient

substance to be a viable alternative." *United States v. DeCologero*, 530 F. 3d at 76-77.

Here, prior to representing Koustas, Iacopino and Rancourt represented Allain, who in

2010 provided the government with information that led to the investigation and subsequent

prosecution of Koustas and his co-defendants. Attorney Aff. ¶ 20. Included in this proffer,

Allain told authorities he had delivered marijuana at Koustas's restaurant, to Koustas's

employees. Koustas Aff. ¶ 20. However, four years later, when Koustas hired Iacopino to

represent him, Iacopino didn't alert Koustas to his or his associate's prior representation of

Allain, or tell Koustas that Allain was instrumental in initiating the investigation. Even as the

case proceeded, and AUSA Ollila emailed Iacopino on several occasions asking him about the

conflict, Iacopino didn't bring the conflict to Koustas' attention. Neither did Iacopino,

Rancourt or AUSA Ollila bring the conflict to the Court's attention, despite the obligation to

do so. *See e.g., Mannhalt v Reed*, 847 F.2d 575, 583-87 (9th Cir 1988). Rather, Koustas was

informed about Iacopino's former representation of Allain months into Koustas's case, when

Iacopino was presenting Koustas with a draft plea agreement. Attorney Aff. ¶ 5. Even then,

Iacopino didn't inform Koustas of the potential for divided loyalties given the confidential

communication in his possession, both personally based on Allain's proffer and through his

associate, Rancourt, who otherwise represented Allain. Even when Rancourt represented

Koustas at his suppression motion, Koustas was not informed of the divided loyalties. As

such, Koustas cannot be said to have waived the conflict after receiving informed consent. *See*

*e.g.*, *Kevlik v. Goldstein*, 724 F. 2d at 850. Moreover, Iacopino's and AUSA Ollila's belief that

the plea would render the conflict "moot" was inaccurate, as timely notice of the conflict, and

its potential for divided loyalties, would have affected Koustas's decision-making relative to

his choice of lawyers. As it was, by the time Koustas learned of the conflict, his funds were

depleted and he felt pressured into taking a plea. Koustas Aff. ¶ 28-30.

Indeed, after Iacopino's revelation of the conflict, Koustas wrote Iacopino a letter, in

which he said he felt intimidated, threatened and forced into pleading guilty. He asked

Iacopino to provide the remaining discovery, including the warrants and related affidavits, and

said he wished to explore his suppression rights. Koustas followed up with a similar letter to

Iacopino dated February 23, 2015, again asking for the discovery and asserting he was unable

to take the plea. Separately, Koustas pressed Iacopino to challenge Kacavas's conflicted involvement in the investigation and prosecution of his case. Iacopino said Kacavas's conflict was inconsequential, and didn't investigate or otherwise prepare the requested motion to suppress. With a trial date looming and no motion to suppress or motion to dismiss on file, Koustas agreed to resolve his case, but not without continuing to request that Iacopino investigate his suppression motion prior to any plea.

For all these reasons, Koustas asserts that Iacopino's and Rancourt's representation of Koustas subsequent to their representation of Allain resulted in divided interests and loyalties, fueling Iacopino's unwillingness to alert Koustas or the Court to his former conflicting representation of Allain and his wish to resolve the matter short of trial—hoping to render the conflict "moot." *Reyes-Vejerano v. United States*, 276 F.3d at 100. Had Iacopino and Rancourt been forced to try the case, or file motions to suppress that raised questions about the government's informants, they would have been required to inquire about or even cross-examine their former client, Allain, relative to his proffer, including statements related to his presence at Koustas's restaurant and the delivery of marijuana to Koustas's employees. They also would have been required to cross-examine Allain relative to his own involvement in the continuing conspiracy, information within their possession.[12] Moreover, the possibility also exists that AUSA Ollila had exculpatory evidence she failed to produce, inaccurately

---

[12] Because Koustas resolved his case short of trial, he is uncertain whether there exists additional Jencks material regarding Allain in the possession of the prosecutor, as well as additional relevant and exculpatory information in the possession of Iacopino and/or Rancourt as Allain's counsel.

believing the plea negotiations rendered the conflict moot.[13] *See, State v. Gonzalez*, 173 A. 3d 583, citing *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994)(Divided loyalties create a disqualifying conflict where "the conflict could cause the defense attorney improperly to use privileged communications in cross-examination" or where "the conflict could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client or to advance the attorney's own personal interest."); *United States v. Bowie,* 892 F. 2d 1494, 1502 (10th Cir.1990) ("If the district court determines that an actual conflict adversely affected counsel's performance and there was no valid waiver, the court should order a new trial."); *United States v. Iorizzo***,** 786 F.2d 52, 57–58 (2d Cir. 1986)(where trial counsel had a conflict of interest because he had previously represented the state's key witness on a related matter and failed to effectively cross examine this witness after the trial judge had told counsel that he might encounter ethical problems if he pursued certain lines of questioning).

Where Attorney Iacopino could have pursued a plausible alternative defense strategy on Koustas's behalf, and arguably didn't due to conflicting loyalties, Koustas has met his burden of demonstrating an actual conflict.

---

[13] Koustas is aware that AUSA Ollila failed to provide the his co-defendant, Nakos, with exculpatory evidence relative to another government witness in the case, requiring reversal of co-defendant Nakos's conviction. *See,* 14-cr-93-01-LM, document 287, *Defendant's Motion for New Trial*.

**3. A Hearing Is Necessary To Resolve Disputes of Material Fact.**

Koustas has made a threshold showing that there are material facts in genuine doubt or dispute. *See, United States v. Lilly,* 983 F.2d 300 (1st Cir. 1992); *United States v. Abou-Saada*, 785 F2d 1, 6 (1st Cir.); *United States v. Bowie*, 892 F. 2d 1494 (10th Cir. 1990) ("We cannot discern from the record the precise scope of the prior representation, whether the *witness* waived any attorney-client privilege that might have restricted defense counsel's cross-examination. Nor can we determine whether *defendant* had knowledge of his counsel's prior representation of the government witness and waived his right to counsel free of such conflicts, which is more likely in a case such as this one when defendant has hired counsel. Consequently, under the circumstances, we are hesitant to dispose of the conflict claim without an evidentiary hearing on the matter by the district court."); *Hernandez-Hernandez v United States,* 904 F.2d 758, 762 (1st Cir. 1990).("[28 U.S.C. § 2255] itself erects the first barrier: a hearing is necessary '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'") *Myatt v. United States*, 875 F.2d 8, 11 (1st Cir. 1989).

In this case, a hearing is required to (1) assess whether Kacavas recused himself and, if he did, the timing and scope of any recusal; and (2) assess the scope of Iacopino's and Rancourt's conflict, whether they failed to pursue an alternate defense strategy as a result of the conflict, whether either informed Koustas of the scope of the conflict and his right to conflict-free representation, and whether there existed additional exculpatory evidence that would have bore on Koustas's decision-making. *Kevlik v. Goldstein*, 724 F. 2d at 850. Finally, Koustas reiterates his separate claims of ineffective assistance of counsel and would question the

witnesses relative to those claims as well, some but not all of which are raised in this

supplemental memorandum.

**CONCLUSION**

For all of the reasons cited herein, the Petitioner respectfully asks this Honorable Court to

ALLOW his Motion to Vacate pursuant to 28 U.S.C. § 2255.

Respectfully submitted,
**KOSMAS KOUSTAS**
By his attorney,

/s/ Victoria Kelleher

Victoria Kelleher
(#637908)
LAW OFFICE OF VICTORIA KELLEHER
One Marina Park Drive,
Suite 1410
Boston, MA 02210
(978) 744-4126
victoriouscause@gmail.com

Certificate of Service

I, Victoria Kelleher, attorney of record for the Petitioner Kosmas Koustas,
do hereby state that I have provided a copy of the Petitioner's Supplemental
Memorandum and associated Affidavit of Counsel on all the parties by efile this
day.

Signed,

/s/ Victoria Kelleher
Victoria Kelleher